**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-CR-80154-ROSENBERG**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JERMAINE KHIRY NELOMS,

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S**
**MOTION FOR COMPASSIONATE RELEASE**

This cause comes before the Court upon Defendant's Motion for Compassionate Release. The Government filed a Response to the Motion. The Motion is denied for the reasons set forth below.

Defendant seeks a compassionate release due to COVID-19. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Liberally construed, Defendant has provided proof that he has exhausted administrative remedies in connection with that request. For the Court to order such a release, the Court would have to determine that "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court finds that "extraordinary and compelling reasons" that are "consistent with applicable policy statements issued by the Sentencing Commission" warrant such a reduction." § 3582(c)(1)(A). The pertinent 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for

the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). Thus, for the Court to order a compassionate release, the Court would also have to find "extraordinary and compelling reasons" warrant such a release as defined by USSG § 1B1.13. The Court finds that Defendant has not met this burden for the reasons set forth in the Government's Response, including:

> The application notes to Section 1B1.13 list three criteria for consideration as "extraordinary and compelling" circumstances under Section 3582(c)(1)(A):
>
> 1. Medical Condition of the Defendant;
> 2. Age of the Defendant; and
> 3. Family Circumstances.
>
> Neloms relies upon his medical conditions of hypertension and obesity as the basis for his requested relief. As defined in U.S.S.G. § 1B1.13, n.1:
>
> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> A) **Medical Condition of the Defendant**.—
> (i) The defendant is suffering from a **terminal illness** (i.e., a serious and advanced illness with an end of life trajectory)… Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is— a. Suffering from a **serious physical or medical condition**, b. Suffering from a **serious functional or cognitive impairmen**t, or
> c. Experiencing **deteriorating physical or mental health** because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> . . .
>
> Neloms does not qualify for a sentence reduction under 18 U.S.C. §3582(c)(1)(A)(i) because no extraordinary and compelling reasons warrant the reduction. Neloms does not allege that he is suffering from a terminal illness. While

2

Neloms has high blood pressure, according to his medical records, he is taking medication and his condition is controlled. Neloms' March 30, 2020 health record documented high blood pressure (149/94) because Neloms was not taking his prescribed medications. On May 21, 2020, health officials recorded a blood pressure of 130/86, presumably because Neloms was taking his prescribed medication. Neloms does not allege, nor can he establish, that his hypertension substantially diminishes his ability to provide self-care within his facility. With regard to Neloms' claim that he is clinically obese, there is no documentation within his medical records to support this statement.

As the Court is aware, compassionate release on the basis of an inmate's medical condition is limited. See United States v. Willis, 352 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (relief is "rare" and "extraordinary"); United States v. Lisi, 2020 WL 881994, at *4 (S.D.N.Y. Feb. 24, 2020) ("a defendant's medical condition must be one of substantial severity and irremediability, and Lisi has not shown that he suffers from such conditions."); United States v. Polnitz, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020) (a medical condition must be extraordinary; "Many inmates suffer from pain and mental illness.").

Further, chronic conditions, such as hypertension, that can be managed in prison, are not a sufficient basis for compassionate release. See United States v. Ayon-Nunez, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020); United States v. Bunnell, 2019 WL 6114599 (D. Ariz. Nov. 18, 2019) (the defendant has "serious medical issues" – he "suffers from arthritis, sciatica, bulging lumbar discs 2-5, scoliosis, and degenerative disease causing central stenosis in his spine," and is confined to a wheelchair – but none of these are terminal illnesses or substantially diminish his ability to provide self-care within the environment of a correctional facility); United States v. Mitchell, 2020 WL 544703 (W.D. Ark. Feb. 3, 2020) (the defendant suffers from ordinary geriatric issues, including hypertension, gastroesophageal reflux disease, lower back pain, and benign prostatic hyperplasia, which do not prevent him from holding a job or providing self-care).

Several courts have considered motions filed by inmates wherein, as here, hypertension was the only condition presented, and have denied relief. See, e.g., United States v. Adams, 2020 WL 3026458 (D. Conn. June 4, 2020) (59-year-old at Devens with high blood pressure does not present risk factor); United States v. Melgarejo, 2020 WL 2395982, at *4 (C.D. Ill. May 12, 2020) ("The Court could find no cases where a defendant with hypertension and no comorbidities was granted relief under the compassionate release statute."); United States v. Alexander, 2020 WL 2468773, at *5 (M.D. La. May 13, 2020) (release denied for a variety of reasons, including the view that high blood pressure by itself is not a sufficient extraordinary and compelling reason); United States v. Elias, 2020 WL 3064232 (N.D. Ohio June 9, 2020) (ordinary hypertension insufficient); United States v. Binraymond, 2020 WL 2110577 (S.D. Ohio May 4, 2020) (high blood

3

>pressure alone does not suffice; also denied in light of criminal history); United States v. Binraymond, 2020 WL 2110577 (S.D. Ohio May 4, 2020) (defendant has high blood pressure; denied based on 3553(a) factors); United States v. Nesbitt, 2020 WL 3412577, at *4 (E.D. Pa. June 22, 2020) (ordinary hypertension does not justify release); United States v. Hammond, 2020 WL 2126783, at *5 (W.D. Pa. May 5, 2020) (denied for 56-year-old with hypertension, with 4 months left to serve on 36-month sentence; no cases at Allegheny County Jail, and "[u]nfortunately, that potential [for infection] exists anywhere in the community."); United States v. Wood, 2020 WL 3162944, at *2 (E.D. Tenn. June 12, 2020) (hypertension is not a risk factor; "While the Court sympathizes with Mr. Wood's concerns, it is unwilling to order the release of prisoners whose underlying conditions, based on the CDC's guidelines, do not place them at a greater risk of severe illness from COVID-19; otherwise, the Court, to be evenhanded, would face the untenable situation of having to release all prisoners with any underlying condition.").
>
>Neloms simply does not meet § 1B1.13.

DE 49 at 3-6.

Furthermore, for the Court to order a compassionate release Defendant would have to meet his burden to show that his release would not affect the Court's duty to "protect the public from further crimes of the defendant" as defined by USSG § 1B1.13.  Defendant has not met his burden for the reasons set forth in the Government Response, including:

>As amended November 1, 2018, the Commission's policy statement repeats the text of Section 3582(c)(1)(A) and adds that the court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Per the Sentencing Commission guidelines delineated in § 1B1.13, Neloms is ineligible for compassionate release because he qualifies as an offender who constitutes "a danger to the safety of any other person or to the community" as provided in 18 U.S.C. § 3142(g), thus barring him from receiving a reduced sentence. Narcotics-related offenses are explicitly covered by the impliedly dangerous criminal offense categories listed in 18 U.S.C. § 3142(g)(1).
>
>In this case, Neloms was held responsible for distributing 100-400 grams of heroin while armed. After intercepting numerous phone calls between Neloms and his heroin customers, agents later searched Neloms' stash house and residence. Inside Neloms' stash house, agents located heroin, digital scales, empty capsules, a loaded Ives Johnson Arms Model M1 Carbine .30 caliber semi-automatic rifle, and a loaded Glock 19 semi-automatic pistol. The Carbine rifle was underneath a sofa

4

cushion in the living room. Agents also located on top of a table a small box that contained empty capsules. In the kitchen, agents found a bottle of super lactose (cutting agent) and heroin capsules in a plastic baggie inside a cabinet. The digital scales were also in the same area. In the bathroom, agents found a Comet cleaning bottle containing heroin. The Glock 19 pistol was in a ceiling tile in the hallway and was readily accessible. Inside Neloms' residence, agents located inside the kitchen cabinet a small digital scale with a razor blade, a spoon with a powdery residue, a small clear plastic baggie that further contained several capsules of heroin, an uncapped bottle of super lactose (known cutting agent), and a clear plastic baggie containing unfilled capsules. In the master bedroom, agents found a black Glock handgun case (empty) and a clear plastic baggie that further contained .1 grams of crack cocaine. In the nightstand drawer to the right side of the bed was $5860 U.S. currency. In the master bedroom closet, agents found a loaded Smith and Wesson AR-15 rifle. Agents also located a loaded black Glock 10 mm handgun in this closet. On the right side of the closet, on the top shelf was a white plastic shopping bag that further contained a handgun holster and numerous boxes of .30 caliber ammunition. All of the firearms were loaded. All firearms had one round in the chamber. The Smith and Wesson .223 AR had a live round in the chamber and an empty magazine.

Neloms' criminal history includes convictions for sale of cocaine (20.1 months imprisonment), carrying a concealed firearm, and possession of a firearm by a convicted felon (1 year and 1 day imprisonment). These prior prison sentences did not dissuade Neloms from committing the instant crimes.

Neloms cites his family support for the proposition that he no longer poses a danger to the community. However, it is worth noting that Neloms had all of this same support when he committed the instant crimes. Neloms' father knew about Neloms' criminal choices, but was powerless to stop Neloms. On July 12, 2018, Neloms made an intercepted call to his father. During this call, Neloms said, "…do you think I, like, have, have a gun, bitch, because at the end of the day I know I got to protect myself. But at the end of the day, I ain't supposed to have no gun. These police can pull me over. I got to either run or get pulled over, hope they don't check the car and have to go to jail, bond out, and be ready to do time again. That's my life every day, cat, and I accept it."

. . .

Based on these facts, and all of the Section 3553(a) factors, the Government submits that Neloms remains "a danger to the safety of any other person or to the community" as provided in 18 U.S.C. § 3142(g).

*Id.* at 6-8.

Finally, the Court's notes that Defendant has requested to supplement the record with medical information at docket entry 48. The Court grants that request, however, nothing at docket entry 48 alters the substance of the Government's analysis nor alters the Court's decision.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion for Compassionate Release [DE 46] is **DENIED**. Defendant's Motion for Appointment of Counsel [DE 46] is **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 18th day of August, 2020.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record